IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| SCOTT and MELISSA DICKINSON, | ) | |
|---|---|---|
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 13-00631-CG-N |
| THE TERMINIX INTERNATIONAL COMPANY, LP, et al., | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

In this case, removed from the Circuit Court of Mobile County, Alabama on December 20, 2013 (*see* Doc. 1), the plaintiffs have filed a motion to remand (Doc. 10), which has been referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2, for entry of a report and recommendation. Consistent with the submission order (Doc. 11), the defendants have filed an opposition (Doc. 13), and the plaintiffs have filed a reply in support of remand (Doc. 16). After consideration of the pleadings, and for the reasons explained herein, it is **RECOMMENDED** that the motion to remand (Doc. 10) be **GRANTED** and that this case be **REMANDED** to the Circuit Court of Mobile County, Alabama.

### I. Discussion[1]

**A. The defendants must prove that this Court has subject-matter**

---

[1] Because the issue before the Court is predominantly a question of law, applicable background facts are interspersed in the undersigned's analysis.

**jurisdiction, which in the context of this case means they must prove that the plaintiffs have joined a resident defendant solely to defeat the Court's jurisdiction.**

"Any civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court." *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996) (citing 28 U.S.C. § 1441(a)), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000); *accord City of Vestavia Hills v. General Fid. Ins. Co.*, 676 F.3d 1310, 1313 n.1 (11th Cir. 2012). And a federal court may exercise diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states. 28 U.S.C. § 1332(a)(1). Nevertheless, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly . . . . Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." *University of S. Ala.*, 168 F.3d at 411; *cf. D.M.C. Enters. Inc. v. Best McAllister, LLC*, Civil Action No. 10-00153-CB-N, 2010 WL 3039477, at *2 (S.D. Ala. Aug. 4, 2010) ("Because it is conferred by statute, the right of removal is strictly construed to limit federal jurisdiction." (citing *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996))); *White v. Wells Fargo Home Mortgage*, Civil Action No. 1:11–cv–408–MHT, 2011 WL 3666613, at *3 (M.D. Ala. Aug. 22, 2011) (a federal court is "obligat[ed] to narrowly construe removal statutes"; this obligation necessarily "requires that uncertainties be 'resolved in favor of remand'" (quoting *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994))).

Therefore, the defendants must establish the propriety of removal under section 1441 and, as such, "bear[] the burden of establishing the existence of federal jurisdiction[,]" *Brown v. Kabco Builders, Inc.*, Civil Action 07-0099-WS-C, 2007 WL 841690, at *1 (S.D. Ala. Mar. 15, 2007) (citing *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002)), which requires that they both establish complete diversity—that all plaintiffs are diverse from all defendants, *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (citation omitted); *accord Auto-Owners Ins. Co. v. Great Am. Ins. Co.*, 479 Fed. App'x 228, 232 n.3 (11th Cir. June 21, 2012) (per curiam)—and show that the amount in controversy more likely than not exceeds the $75,000 jurisdictional minimum, *see Fitzgerald v. Besam Automated Entrance Sys.*, 282 F. Supp. 2d 1309, 1314 (S.D. Ala. 2003).

Here, the defendants have made a showing sufficient to establish—and the plaintiffs do not contest—that the amount in controversy exceeds the jurisdictional minimum (*see, e.g.,* Doc. 1, ¶ 13). The sole task for the Court, then, is to determine whether the non-diverse (or resident) defendant, Ken Stroh, was fraudulently joined to defeat this Court's jurisdiction. That is, the defendants can establish complete diversity of citizenship by proving that Stroh, a resident of the same state as the plaintiffs (*see* Doc. 1 at 10, compl., ¶ 2 (Stroh "is an adult resident citizen of Mobile County, Alabama")), has been joined ***solely*** to defeat federal diversity jurisdiction. *See Tapscott*, 77 F.3d at 1359 ("An action may nevertheless be removable if the joinder of non-diverse parties is fraudulent."); *Sellers v. Foremost Ins. Co.*, 924 F. Supp. 1116, 1117 (M.D. Ala. 1996) ("The citizenship of a resident defendant

3

fraudulently joined should not be considered by a court for the purpose of determining diversity jurisdiction.").

The defendants' burden in this regard is "a heavy one." *See Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998).

> When a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court. The plaintiff is said to have effectuated a "fraudulent joinder," *see Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997), and a federal court may appropriately assert its removal diversity jurisdiction over the case. A defendant seeking to prove that a co-defendant was fraudulently joined must demonstrate either that: "(1) there is no possibility the plaintiff can establish a cause of action against the [non-diverse or] resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Id*. The defendant must make such a showing by clear and convincing evidence. *See Parks v. N.Y. Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962).

*Henderson v. Washington National Insurance Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006) (footnotes omitted); *accord Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.*, 436 Fed. App'x 888, 890 (11th Cir. May 31, 2011) (per curiam); *Roberson v. BancorpSouth Bank, Inc.*, Civil Action No. 12–716–CG–N, 2013 WL 2896840, at *3 (S.D. Ala. June 13, 2013) (same).

In the context of fraudulent joinder, the Court is required to both evaluate the parties' factual allegations and submissions in the light most favorable to the plaintiff and resolve all uncertainties about state substantive law in favor of the plaintiff. *See Crowe*, 113 F.3d at 1538. And although the determination of whether a non-diverse defendant has been fraudulently joined "should be made based upon the plaintiff's pleadings at the time of removal," *Cabalceta*, 883 F.2d at 1561 (citing

4

*Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939)), a district court "can consider any submitted affidavits and/or deposition transcripts," *id.* (citing *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983) ("Both parties may submit affidavits and deposition transcripts." (citing, in turn, *B, Inc. v. Miller Brewing Co.*, 663 F.2d 545, 550 (5th Cir. Unit A Dec. 1981))), *superseded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir. 1993)); *see also Abrams v. Olin Corp.*, 248 F.R.D. 283, 291 (S.D. Ala. 2007) (The "fraudulent joinder analysis is not confined to the pleadings, but may also encompass 'any affidavits and deposition transcripts submitted by the parties.'" (quoting *Legg v. Wyeth*, 428 F.3d 1317, 1322 (11th Cir. 2005)).

Given these parameters, some courts have analogized the fraudulent joinder inquiry to that applied to a motion for summary judgment. *See Crowe*, 113 F.3d at 1538. **Importantly,**

> *[h]owever,* while the analysis is similar, "the jurisdictional inquiry 'must not subsume substantive determination' . . . [and w]hen considering a motion for remand, **federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law**." *Crowe*, 113 F.3d at 1538. This court's authority to assess the "ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims" and it should not attempt to determine "the merits of cases that do not appear readily to be frivolous or fraudulent." *Id.* at 1541-42.

*Atwood v. Weyerhaeuser USA, Inc.*, Civil Action No. 09-0379-CG-N, 2010 WL 749337, at *5 (S.D. Ala. Feb. 26, 2010) (Granade, J.) (emphasis added); *see id.* at *6 (describing the inquiry into the plaintiffs' claims for purposes of fraudulent joinder as "basic"—"The court must merely decide whether the defendants have shown by

5

clear and convincing evidence that no Alabama court could find plaintiffs' complaint[, as supplemented by their] affidavit[,] sufficient to invoke claims for nuisance, negligence, wantonness and trespass."); *Triggs*, 154 F.3d at 1287 ("The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a ***possibility*** of stating a valid cause of action in order for the joinder to be legitimate." (emphasis in original)); *Burden v. General Dynamics Corp.*, 60 F.3d 213, 217 (5th Cir. 1995) ("[I]n testing for fraudulent joinder the district court in its discretion may 'pierce the pleadings,' albeit in so doing the court should not conduct an evidentiary hearing but, based on appropriate documentation in addition to the pleadings, should instead resolve all disputed questions of fact in favor of the plaintiff.").

As *Burden* and *Atwood* make clear, in "piercing the pleadings" to determine whether a claim exists against a resident defendant, a court may not step beyond the threshold jurisdictional inquiry and wade into the merits. *See also In re Briscoe*, 448 F.3d 201, 218 (3d Cir. 2006) ("Assuming a district court can 'pierce the pleadings' to determine whether a plaintiff has asserted a colorable claim against the non-diverse defendant, 'that inquiry is far different from the summary judgment type inquiry made by the district court here.' The district court, 'in the guise of deciding whether the joinder was fraudulent, stepped from the threshold jurisdictional issue into a decision on the merits' . . . ." (discussing and quoting *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 112-13 (3d Cir. 1990) (internal citations omitted))); *cf. Eckhart v. DePuy Orthopaedics, Inc.*, Case No. 2:03-cv-1063, 2004 WL

524916, at *2-4 (S.D. Ohio Mar. 3, 2004) ("Because a factual attack on the well-pleaded allegations of the plaintiff's complaint resembles an effort to obtain summary judgment on the merits, courts have struggled with the appropriate legal standard to be applied in such a situation.").

> B. **Because it has not been shown that the plaintiffs' claims against Ken Stroh are not possible, the Court must consider his citizenship for purposes of determining jurisdiction and conclude that diversity jurisdiction is lacking.**

In their complaint, plaintiffs do not allege that Stroh, Terminix's "licensed permittee" (Doc. 1 at 10, compl., ¶ 2), committed independent acts or omissions. They instead allege that all defendants are liable for all causes of action in the complaint—for (1) fraudulent misrepresentation/suppression; (2) negligence, recklessness, and negligence *per se*; (3) negligent training, supervision, and retention; (4) breach of contract; and (5) equitable relief—by asserting that ***both*** Terminix International, Inc. ***and*** Stroh

> are charged by the state's pest control laws with the non-delegable responsibility for overseeing, supervising, and ensuring the quality of work performed by Terminix International, Inc.'s technicians who performed the work regulated by the pest control laws at issue.

(*Id.*, ¶ 4.; *see also id.*, ¶ 5 (alleging "Terminix International, Inc. is required to employ a natural person who is charged by Alabama law with the ***independent duty*** to provide advice and prescriptions for structural pest control to a high degree of workmanship and in a professional manner, much like a nurse has independent duties to provide quality nursing case" (emphasis in original)); *cf.* ¶ 6 ("All Defendants are required by state law to carry and to certify to the state that they carry liability and error and omissions insurance that actually covers any of the

7

claims raised herein.").)

Thus, the plaintiffs seek to hold Stroh, the alleged "licensed permittee" (Doc. 1 at 10, compl., ¶ 2), independently liable by asserting that he has an independent, individual duty—by virtue of his position, not work he performed—under Alabama's Termite Code, ALA. CODE § 2-28-1, *et seq.*, (the "Termite Code") and rules and regulations promulgated by the Alabama Department of Agriculture and Industry (the "ADAI") pursuant to the Termite Code, *see* ALA. ADMIN. CODE r. 80-10-9-.01, *et seq.*[2] In this regard, in their remand motion, similar to in their complaint, the plaintiffs contend that "[t]ermite prevention work does not involve an ordinary duty but, like surveyors or engineers, a duty Alabama's Legislature has deemed a professional one." (Doc. 10 at 6; *see also id.* at 7 ("Like the duties of surveyors, engineers or lawyers who work for a firm owe clients the duty for honesty and professionalism, Terminix executives [have] acknowledge[d] that both the organization (Terminix) and the licensed 'permittee' or 'operator' must also assure that services are provided as required by regulations and do not result in fraudulent

---

[2] Pursuant to the Termite Code,

> The commissioner with the approval of the State Board of Agriculture and Industries may adopt and promulgate rules and regulations that are reasonable and necessary to carry out the intent and purpose of this chapter and to regulate persons engaged in professional services or defined in this chapter to prevent fraudulent and unauthorized practices of those professional services or work.

ALA. CODE § 2-28-3. Further, "permittee" is defined by the applicable provision of the Alabama Administrative Code as "[t]he person issued a permit to engage in professional work or services at a particular business location covered under the provisions of the chapter." ALA. ADMIN. CODE r. 80-10-9-.02(29). A "business location" is, in turn, defined as "[a]ny location in or from which professional work or services are solicited, accepted or conducted." *Id.*, r. 80-10-9-.02(5).

8

and unfair practices.").) The plaintiffs first point to a provision of the Alabama Administrative Code, § 80-10-9-.03 that

> requires persons desiring to engage in structural pest control work, including termite eradication and prevention, to obtain an annual permit from the commissioner in accordance with Ala. Code § 2-28-4. Once obtained, the Alabama Termite Code imposes a duty on permittees to perform structural pest control work with a "high quality of workmanship" and maintain "a continued level of competence and ability"

(Doc. 10 at 6-7 (quoting ALA. CODE § 2-28-3).)

The plaintiffs further argue that Stroh is a "Certified Operator," citing to Exhibit B [Doc. 10-2] to the remand motion, purported to be "an official record generated by the ADAI in the course of its official investigation into the formal complaint filed by The Dickinsons against Defendants." (*Id.* at 10.) Exhibit B, titled Professional Services Contact Report, appears to document a June 5, 2013 "secure records directive" contact with Terminix on behalf of the plaintiffs, and identifies Stroh as "Certified Person." (*See* Doc. 10-2.) "Certified Operator" has similar definitions under both the Termite Code—"[a] person who has been certified by the commissioner as qualified to supervise the operation of a main office or a branch office[,]" ALA. CODE § 2-28-1(8)—and the rules and regulations promulgated thereunder—"[a] person who has been certified by the examining board as qualified to supervise the operation of a main office or branch office[,]" ALA. ADMIN. CODE r. 80-10-9-.02(7). As the permittee or Certified Operator (or Certified Person), the plaintiffs further argue, Stroh had certain responsibilities, imposed by the Termite Code and its implementing rules and regulations. (*See, e.g.,* ALA. ADMIN. CODE r. 80-10-9-.12(1) (". . . In order to provide adequate supervision of professional work or

9

services performed, ***the permittee shall be responsible*** for the actions of the supervisor, certified operator and branch supervisor and such person's compliance with the chapter and regulations promulgated thereunder. The supervisor, certified operator, or branch supervisor shall be in charge of and actually participate in the operation of the office." (emphasis added)).) The plaintiffs continue—

> Defendant Stroh is responsible for Terminix's structural pest control work performed at Plaintiffs' home as alleged throughout the Complaint.
>
> Alabama Administrative law charges a Certified Operator with the responsibility to comply with Ala. Admin. Code § 80-10-9-.02(11), §80-10-9-.19(1) and § 80-10-9-.20. Part of this duty . . . includes the duty to give advice and prescriptions for control and eradication of termites and to adequately supervise the employees who are performing work in a particular branch. Hence, a Certified Operator like Stroh is not only responsible for ensuring performance of a label compliant treatment under Ala. Admin. Code 80-10-9-.20 every day the property is under a contract that promises to provide that service or which the law imposes if the contract is silent on the scope of treatment, but also that the company has complied with the additional minimum requirements for subterranean termite control under the subsections of Ala. Admin. Code 80-10-9-.20(1-8). It is exactly the failure to ensure compliance with minimum treatment standards required by pesticide labels, Terminix's [Minimum Basic Requirements, or] MBRs, and the Alabama Admin. Code 80-10-9-.20 that Plaintiffs alleged in the complaint, including paragraphs 36 and 61, that was not performed and which the person believed to be the licensed permittee, Ken Stroh, failed to do.

(Doc. 10 at 9-10.)

In opposition to the plaintiffs' remand effort, the defendants first offer Stroh's declaration, in which he states he "did not hold the position of the designated Certified Operator for Terminix's Mobile branch when the pre-treatment was performed to the plaintiffs' home in 2004, or when damage was discovered and the property was re-treated in 2012 and 2013." (Doc. 13 at 8, Stroh Decl., ¶ 2.)

10

Applicable to this argument, Exhibit B to the remand motion, purported to be a record from ADAI, identifies Stroh as the "Certified Person" in June 2013. Thus, at best for the defendants, there is conflicting evidence as to when Stroh was the Certified Operator/Certified Person. As *Burden* instructs, in determining whether a resident defendant is fraudulently joined, "courts should not conduct as evidentiary hearing but, based on appropriate documentation in addition to the pleadings, should instead resolve all disputed questions of fact in favor of the plaintiff." 60 F.3d at 217.[3] Based on the plaintiffs' complaint, moreover, "when" may not matter much because the plaintiffs contend the defendants' argument as to applicable time

---

[3] In their opposition, the defendants argue that Exhibit B is merely "an unauthenticated hearsay document" (Doc. 13 at 2 n.1) and, presumably, cannot be considered in the fraudulent joinder analysis. First, as this Court has observed, there is "implicit—nonbinding—authority for the proposition that a district court may consider evidence other than 'affidavits and/or deposition transcripts'[—as "appropriate documentation in addition to the pleadings[,]" *see Burden*, 60 F.3d at 217—]in [a] fraudulent joinder analysis, ***but*** [such] evidence should be authenticated." *Fergerson v. Tennessee Am. Recycling, LLC*, No. CA 2:11–549–KD–C, 2011 WL 6670191, at *4 & n.3 (S.D. Ala. Dec. 2, 2011) (quoting *Cabalceta*, 883 F.2d at 1561) (emphasis added) (collecting authority), *report & recommendation adopted*, 2011 WL 6704015 (S.D. Ala. Dec. 21, 2011). Contrary to the defendants' belief, Exhibit B is not necessarily unauthenticated. Attorney Campbell has submitted a sworn affidavit stating that Exhibit B, identifying Stroh as a "Certified Person," was "obtained from ADAI's official investigation into the Dickinsons' consumer complaint[.]" (Doc. 10-3,¶ 6.) And even if the undersigned chose to ignore the actual exhibit, Campbell's affidavit itself, in which he further testifies that his firm's investigation "concluded that Mr. Stroh was the certified permittee/operator[,]" may be considered ***independent of Exhibit B***. *See, e.g., Abrams*, 248 F.R.D. at 291 (The "fraudulent joinder analysis . . . may also encompass 'any ***affidavits*** and deposition transcripts ***submitted by the parties***.'" (quoting *Legg*, 428 F.3d at 1322) (emphasis added)). Further, to too narrowly focus on the authenticity (as opposed to the content) of Exhibit B at this stage, would circumvent the fraudulent joinder standard, under which courts are instructed not to conduct evidentiary hearings, but instead "resolve all disputed questions of fact in favor of the plaintiff"—the party not seeking to establish the jurisdiction of this Court, similar to the nonmoving party at summary judgment. *Burden*, 60 F.3d at 217; *cf. Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293-94 (11th Cir. 2012) ("a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form" (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999))).

period mischaracterizes, by narrowing, the scope of their claims: "the allegations of wrongdoing made against all Defendants, including Ken Stroh, are much broader in scope." (Doc. 16 at 4 (citing Doc. 1 at 21, compl., ¶¶ 58-61 (alleging ***ongoing*** duties the defendants owed the plaintiffs).[4]

The defendants next contend, in sum, that the plaintiffs

> overstate and mischaracterize the [applicable] regulations[, which] do not, as claimed by plaintiffs, establish some obligation by Mr. Stroh to personally ensure the quality of every termite service performed out of the Mobile office. Nor do the regulations create some personal liability on the part of Mr. Stroh for any alleged deficiency in a termite job handled out of that office. Nowhere do plaintiffs assert that Mr. Stroh was personally involved with the allegedly deficient services performed at plaintiffs' home. There is no basis in the regulations or otherwise for claiming that simply holding the position of Certified Operator, in and of itself, renders an individual personally liable for the services.

(Doc. 13 at 3.) As to this argument, the defendants aver that Stroh, as a corporate agent, can only be individually liable if he "personally participates" in a tort. (Doc. 1, ¶ 12; Doc. 13 at 2 (quoting *McInnis v. Pandora Mfg., Inc.*, 820 So. 2d 795, 798-99 (Ala. 2001); citing *Sieber v. Campbell*, 810 So. 2d 641, 645 (Ala. 2001)).) *See also Bethel v. Thorn*, 757 So. 2d 1154, 1158 (Ala. 1999) ("Bethel argues that Thorn, as president of Diesel, can be held individually liable for the fraudulent acts or

---

[4] For example, paragraph 58 alleges that the defendants owed the plaintiffs "the duties of care in the rendition of professional services including, but not limited to, duties to perform a proper inspection in accordance with generally accepted inspection procedures; apply and maintain a treatment in accordance with the instructions on the pesticide label; duties to implement and utilize quality control procedures to identify and correct any deficiencies in the rendition of professional structural pest control services; duties to provide professional advice based on the degree on which the particular prevention services were likely to work; fiduciary duties of full disclosure and reporting, loyalty, honesty and fair dealing; statutory and regulatory duties; duties to warn; and duties to hire, train, supervise, and discipline its employees engaged in providing structural pest control services to the public." (Doc. 1 at 21.)

12

omissions he personally committed in his capacity as a corporate officer. We agree that this is a correct statement of law." (citing *Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc.*, 496 So. 2d 774, 775 (Ala. 1986) ("In Alabama, the general rule is that officers or employees of a corporation are liable for torts in which they have personally participated, irrespective of whether they were acting in a corporate capacity."); *Crigler v. Salac*, 438 So.2d 1375, 1379-80 (Ala. 1983) ("This rule does not depend on the same grounds as 'piercing the corporate veil' . . . .")).

First, neither side has pointed the Court to cases in which individual liability under Alabama's Termite Code and its implementing regulations has been addressed. Neither side has, likewise, provided the Court with cases from other jurisdictions addressing individual liability under similar statutes and regulations. This is not surprising—the undersigned has conducted her own research, and has failed to locate helpful authority from Alabama or elsewhere. A dearth of decisions normally indicates that the applicable state substantive law is unsettled. And "remand is favored where the applicable state substantive law is unsettled." *Headwaters, LLC ex rel. Head v. Dawes Lake, LLC*, Civil Action No. 13–0291–CG–N, 2013 WL 4519198, at *7 n.13 (S.D. Ala. Aug. 26, 2013) (collecting cases).[5]

---

[5] *See Wright v. American Gen. Life & Accident Ins. Co.*, 136 F. Supp. 2d 1207, 1212 (M.D. Ala. 2001) (As the Eleventh Circuit explained in *Crowe*, if there is a conflict in the state substantive law, in evaluating the Plaintiffs' claims under fraudulent joinder analysis, 'any ambiguity or doubt about the substantive state law favors remand to state court.'" (quoting 113 F.3d at 1539)); *Legg v. Armstrong Int'l Inc.*, MDL No. 875, 2012 WL 7761497, at *1 (E.D. Pa. Nov. 29, 2012) (Because "[n]o appellate court in Alabama has addressed the statute of repose in the context of an asbestos claim[,]" the court was "not able to discern whether Alabama, like many states, deems the statute inapplicable to claims arising from latent illnesses, such as asbestos-related diseases. Moreover, Alabama law has not determined whether the asbestos exposure at issue in this case constitutes a

13

While the defendants' interpretation as to liability under the applicable statutory-regulatory scheme may ultimately prevail, which side has presented the most plausible interpretation—*i.e.,* how would this Court decide this issue under Alabama law—is not the issue before this Court.[6] Instead, to determine whether

---

'defect' or 'deficiency' such that the statute could potentially be applicable. As such, Alabama law surrounding this statute is not settled. Rather than predict what the Supreme Court of Alabama would do in deciding the applicability of the statute of repose, the Court will also remand this issue for determination by the transferor court." (citation omitted)); *Salomon v. Massachusetts Mut. Life Ins. Co.*, No. 3:11–cv–01007–HU, 2012 WL 1079843, at *2 (D. Or. Mar. 30, 2012) ("Given the fraudulent joinder standard at issue here, it is unnecessary for me to determine the applicability of [Oregon's statute of repose] to this action. Suffice it to say, any failure to state a claim against Mr. Miller due to this repose statute is not 'obvious' under 'settled' Oregon law. That conclusion answers the fraudulent joinder question." (footnote omitted)).

[6] The defendants attempt to pin liability on Stroh by arguing that the applicable statute and regulations impose a "professional duty" on a legally defined "permittee"—for example, paragraph 5 of their complaint states that Terminix "is required to employ a natural person who is charged by Alabama law with the ***independent duty*** to provide advice and prescriptions for structural pest control to a high degree of workmanship and in a professional manner, much like a nurse has independent duties to provide quality nursing case." But at least one court in this state has distinguished "professionals" from "professional" as used in the Termite Code. In *Dobbins v. Getz Exterminators of Alabama, Inc.*, 382 So. 2d 1135 (Ala. Civ. App. 1980), the court rejected the argument of pest control defendants, found to be in violation of covenants not to compete, that they were immune from such covenants under Ala. Code § 8-1-1(a). *See id.* at 1137 ("The defendants contend that they are professionals and, therefore, they are members of a lawful profession and have immunity from being so enjoined because of the provisions of s 8-1-1 of the Code of Alabama (1975) . . . .").

> The defendants consider themselves as professionals and feel that they are so designated by the provisions of that chapter in our 1975 Code entitled "Entomology, Plant Pathology, Horticulture, Floriculture and Tree Surgery." In such code chapter, certain code sections use phrases such as "persons engaged in professional services or work as defined in this chapter."

*Id.* (quoting ALA. CODE § 2-28-3).

> We disagree with such contentions. The word "profession" so used in said § 8-1-1 means much more than such terms utilized in said Title 2, Chapter 28. The defendants are engaged in a business not a profession. Each of them may be professionals in their business in the sense that they may have worthily attained excellence as to knowledge, skill, training, expertise,

14

Stroh has been fraudulently joined—that is, to prove he was joined **solely** to escape federal diversity jurisdiction—"the defendants [must] show[] by clear and convincing evidence that **no Alabama court could find** plaintiffs' complaint[,]" as supplemented by appropriate documentation, states a claim against Stroh. *Atwood*, 2010 WL 749337, at *6 (emphasis added); *accord Triggs*, 154 F.3d at 1287 ("The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a **possibility** of stating a valid cause of action in order for the joinder to be legitimate." (emphasis in original)). For all the reasons discussed herein, the defendants have not met this burden. *See, e.g., Matthews v. Kindred Healthcare, Inc.*, No. 05-1091-T-AN, 2005 WL 3542561, at *3-4 (W.D. Tenn. Dec. 17, 2005) ("Plaintiff contends that the statutes and regulations in question, with which Shrader is required to comply, establish a duty and a standard of conduct for nursing home administrators. The Court has found no reported Tennessee cases, and the parties have cited none, addressing the duty of care that a nursing home administrator owes to the facility's residents. Nevertheless, the Court is unwilling to conclude that there is no reasonable basis for the Tennessee courts to hold that a nursing home administrator owes a duty to the residents of that facility to provide adequate care through compliance with applicable statutes and regulations. Consequently, the Court finds that there is a colorable basis for predicting that the

---

> proficiency and experience in the pest control field; but ***this would not convert their pest control business into a profession. There are multitudes of businesses, but few professions.***

*Id.* (citations omitted and emphasis added).

plaintiff could recover against Shrader, and that he was not fraudulently joined." (quoting its previous, unpublished order)); *Kohl v. American Home Prods. Corp.*, 78 F. Supp. 2d 885, 892 (W.D. Ark. 1999) ("Given the statutory provisions discussed above, we disagree with the defendant manufacturers' assessment of Arkansas law and believe a cause of action against the pharmacies is cognizable. At this point, the sole question we are considering is whether the pharmacy defendants have been fraudulently joined. To avoid the conclusion that they were fraudulently joined, there need only be a possibility that a right to relief exists under the law and all ambiguities in state law are to be resolved in favor of plaintiff. . . .").

## II. Conclusion

Because the defendants have not shown that the resident defendant, Stroh, has been fraudulently joined, the Court cannot disregard his citizenship for purposes of determining jurisdiction. Therefore, because complete diversity is lacking, this Court does not have subject matter jurisdiction under § 1332. It is accordingly **RECOMMENDED** that the motion to remand (Doc. 10) be **GRANTED** and that this matter be **REMANDED** to the Circuit Court of Mobile County, Alabama.

## III. Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. L.R. 72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 14th day of March, 2014.

/s/ *Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**